UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN W.,<br>                    Plaintiff(s),<br><br>     v.<br><br>PREMERA BLUE CROSS OF<br>WASHINGTON, et al.,<br>                    Defendant(s). | CASE NO. C24-0154-KKE<br><br>ORDER ON JUDGMENT AMOUNT,<br>DEFENDANT'S MOTION TO SEAL, AND<br>PLAINTIFF'S MOTION TO STRIKE |

The parties in this case have submitted supplemental briefs addressing whether Premera must reimburse Brian W. for his son's mental health treatment at the Heritage School ("Heritage") at the out-of-network or in-network rate under Brian W.'s employee welfare benefit plan. Dkt. Nos. 91, 94. Premera also moved to seal certain exhibits it filed in support of its position favoring the out-of-network rate. And Brian W. moved to strike certain other exhibits. Finally, the parties raise new arguments about the applicable prejudgment interest rate and accrual period.

The Court will address each issue in turn and order the parties to file a new proposed judgment consistent with this order.

**A.      Out-of-network versus in-network reimbursement**

Brian W.'s plan generally provides for reimbursement of covered health services from in-network providers at 90% of billed costs, and from out-of-network providers at 50% of billed costs. The parties agree that Heritage was an out-of-network provider. Brian W. nevertheless contends

ORDER ON JUDGMENT AMOUNT, DEFENDANT'S MOTION TO SEAL, AND PLAINTIFF'S MOTION TO STRIKE - 1

that Premera should reimburse him at the higher rate pursuant to a plan provision that allows in-network reimbursement for out-of-network care "[i]f a covered service is not available from an in-network provider[.]"  R1464.  However, that provision goes on to state, "you must request this *before* you get the care."  *Id.* (emphasis added)

There is no dispute that Brian W. did not request in-network treatment prior to A.W.'s enrollment at Heritage.  Accordingly, the Court will award Brian W. benefits at the out-of-network rate.  Even assuming Brian W. is correct that Heritage was uniquely qualified to provide A.W.'s care (*see* Dkt. No. 94 at 4), he cannot take advantage of the plan provision he relies on without showing that he requested in-network treatment before A.W. received the care.

Accordingly, Brian W. is entitled to reimbursement for the Heritage claim at the out-of-network rate: 50% of billed costs after any annual deductibles.

**B.      Premera's motion to seal**

Premera moves to seal its list of all in-network inpatient residential treatment centers, which it filed in support of its position that in-network providers were available to administer A.W.'s care.  Because the Court determines the out-of-network rate is appropriate regardless of whether an in-network provider was available (since Brian W. did not seek preapproval for in-network treatment), the Court has not considered these records in reaching its conclusion and will therefore deny the motion as moot and direct that the sealed records be stricken from the docket. *See United States v. Safran Grp., S.A.*, No. 15CV00746LHKSVK, 2018 WL 11436322, at *4 (N.D. Cal. Sept. 14, 2018) (finding, where court had not considered records in deciding the underlying motion, "that rather than undertaking the analysis required under *Kamakana* [*v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)], the better course is to strike the [records] from the docket and deny the Motion to Seal relating to [the records] as moot").

ORDER ON JUDGMENT AMOUNT, DEFENDANT'S MOTION TO SEAL, AND PLAINTIFF'S MOTION TO STRIKE - 2

**C.    Brian W.'s motion to strike**

Next, Brian W. moves to strike certain documents purporting to show that Premera in fact paid for some portion of A.W.'s treatment at one of the residential care facilities.  Dkt. No. 94 at 7–9.  Brian W. objects that Premera cannot seek an offset based on partial payments it never disclosed during litigation, particularly when those payments would have undermined its earlier position that the claims are not payable under the plan.  *Id.*  While Brian W.'s point is well taken, Premera has not requested any such offset for amounts it may or may not have paid on his claims.  *Compare* Dkt. No. 91 at 6, *with* Dkt. No. 85-1 at 10 (requesting judgment on principal amount of $306,920.42 with no deduction for "claims already paid by Premera").

Accordingly, the Court will deny Brian W.'s motion to strike as moot.  Consistent with Premera's briefing on the judgment amount, the judgment shall not include a deduction for previously undisclosed payments.

**D.    Prejudgment interest**

Finally, although the parties had not previously identified any disagreement on the applicable interest rate or the accrual methodology for calculating prejudgment interest, their supplemental briefs present differing proposals on these issues.  The Court adopts the interest rate and accrual period the parties initially identified in their first supplemental briefs.  *See* Dkt. Nos. 85, 87.

(1) Interest rate

A district court has discretion to award prejudgment interest on an award of ERISA benefits.  *Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 627 (9th Cir. 2007).  In general, "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest 'unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.'"  *Nelson v. EG & G*

ORDER ON JUDGMENT AMOUNT, DEFENDANT'S MOTION TO SEAL, AND PLAINTIFF'S MOTION TO STRIKE - 3

*Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994) (quoting *W. Pac. Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984)).  The relevant interest rate under 28 U.S.C. § 1961 is "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." § 1961(a).  The Ninth Circuit "has a strong policy in favor of the Treasury bill rate[.]" *Blanton v. Anzalone*, 813 F.2d 1574, 1576 (9th Cir. 1987) (citing *W. Pac. Fisheries*, 730 F.2d at 1288–89). It is an abuse of discretion to depart from this rate without a reasoned justification (*id.*) or for the purpose of penalizing the defendant rather than compensating the plaintiff (*Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 989 (9th Cir. 2001).

Here, Brian W. initially proposed a rate of 3.66%, reflecting the one-year Treasury bill rate. *See* Dkt. No. 85-1 at 3; *see also* Dkt. No. 87 at 2 (stating Brian W. prepared to stipulate to Premera's calculation of judgment at the in-network rate using the 3.66% interest rate).  However, after the Court ordered additional briefing on the applicable reimbursement rate (discussed above), Brian W. changed course and now advocates for a 12% rate according to Washington's statutory default interest rate.  *See* Dkt. No. 94 at 4–6 (citing Wash. Rev. Code § 19.52.010).

On this record, substantial evidence does not support deviating from the one-year Treasury bill rate.  The evidence supporting a deviation consists of Brian W.'s declaration stating that he made "early withdrawals from [his] retirement and brokerage accounts" to fund A.W.'s treatment, that his "investments have generally tracked the S&P 500 index," and that, since 2016, "the S&P 500 index return rate has averaged approximately 11.3%" according to a "very basic web search[.]" Dkt. No. 95-4 at 1–2.  Plaintiff also states that he will have to work an additional five years beyond when he otherwise planned to retire because of Premera's wrongful denials.  *Id.* at 2.

Brian W.'s declaration, however, does not specify how much he withdrew from his retirement or brokerage accounts; nor does he present evidence supporting the rates of return for

either account.  His generic statement that he lost the benefits of compounding interest with respect to these funds cannot support calculating interest for the entire award at an 11.3% rate (discerned from a web search)—much less the 12% rate he requests.  *See Syed v. Metro. Life Ins. Co.*, No. 3:21-CV-1098-BEN-JLB, 2022 WL 2759070 (S.D. Cal. July 14, 2022) (holding plaintiff's declaration stating his investment account "had a 5.25% rate since he opened it" was "not 'substantial evidence'" supporting prejudgment interest "above the normal Treasury bill rate"); *Luu v. First Unum Life Ins. Co.*, No. SACV1800970JVSJDEX, 2020 WL 8515206 (C.D. Cal. Nov. 18, 2020) (same where plaintiff stated he retired early and borrowed money on a variable equity line as a result of wrongful denial, but "fail[ed] to submit any declarations other than his own in support of a higher prejudgment interest rate").  Courts that have awarded higher interest rates have typically done so on a significantly more robust record of the plaintiff's lost investment opportunities.  *See, e.g., Doe v. Prudential Ins. Co. of Am.*, 258 F. Supp. 3d 1089, 1093 (C.D. Cal. 2017) (awarding higher rate where plaintiff stated he would have invested in specific equities and funds but for the claim denial and submitted declarations from investment advisors stating that "a substantial part of Plaintiff's portfolio is invested in funds that have earned 11.25% and 11.54% per year on average").

Brian W. cites *Blankenship v. Liberty Life Assurance Company of Boston*, 486 F.3d 620 (9th Cir. 2007), to support deviating from the one-year Treasury bill rate.  But, again, that case involved more specific evidence of lost opportunities.  In *Blankenship*, the plaintiff's declaration stated that, but for the nonpayment of benefits, he would have invested a specific sum of money ($6,093.82 per month) into a specific Vanguard investment account with a specific rate of return.  486 F.3d at 628.  The Court found this evidence of "loss of investment income" substantial enough to support adopting the account's rate of return as the prejudgment interest rate.  *Id.*  By contrast, Brian W. states only that he withdrew an unspecified amount from his retirement and brokerage

ORDER ON JUDGMENT AMOUNT, DEFENDANT'S MOTION TO SEAL, AND PLAINTIFF'S MOTION TO STRIKE - 5

accounts and that his investments generally matched the S&P 500's rate of return, which is identified only based on a "very basic web search." Dkt. No. 95-4 at 2.

Finally, relying on *Frommert v. Becker*, 216 F.Supp.3d 309, 315 (W.D.N.Y. Nov. 3, 2016), Plaintiff requests, in the alternative, that the Court apply the current Federal Prime Rate of 6.75%. Dkt. No. 94 at 7. *Frommert* rejected both the § 1961 rate of 0.66% (as too low) and the plaintiff's requested New York statutory rate of 9% (as too high). Recognizing that the appropriate prejudgment interest rate is a matter of discretion, the court instead applied the Federal Prime Rate, which was then 3.5%. *Id.* *Frommert* thus supports application of the current § 1961 rate.

In sum, Brian W. does not present the sort of substantial evidence needed to support a deviation from the Treasury bill rate. Accordingly, the Court will exercise its discretion to award Brian W. prejudgment interest in an amount equal to 3.66%, which he previously proposed and which Premera has agreed to use as the applicable Treasury bill rate. Dkt. No. 85-1 at 3, Dkt. No. 91 at 6.

(2) Accrual period

Finally, while the parties initially presented a prejudgment interest accrual period using a "midpoint accrual approach" based on the midpoint of the relevant period when Brian W. was paying for A.W.'s care (Dkt. No. 85 at 2), Premera now proposes a different methodology (Dkt. No. 91 at 6). It argues that interest should accrue based on the dates it received Brian W.'s claims, rather than the midpoint of A.W.'s treatment. *Id.* The Court finds the midpoint accrual approach more appropriate in light of the documented claims handling and recordkeeping failures in this case and the already lengthy delay in Brian W.'s reimbursement.

"Awarding prejudgment interest in the ERISA context is a 'question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.'" *Nichols v. Unum Life Ins. Co. of Am.*, 287 F. Supp. 2d 1088, 1094 (N.D. Cal. 2003) (quoting *Shaw v. Int'l Ass'n of*

*Machinists & Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir. 1985)).  Ordinarily, courts "have held that prejudgment interest is appropriate beginning from the date on which the defendant completes a reasonable investigation of the claim."  *Day v. AT&T Disability Income Plan*, No. C 06-01740 JW, 2011 WL 13311872, at *4 (N.D. Cal. Aug. 4, 2011) (citing cases).

Here, Premera proposes an accrual date based on when it received Brian W.'s claims.  But the record reflects substantial issues with Premera's internal processes that would make this approach unworkable and unfair in this case.  For instance, Premera proposes a February 2021 accrual date for certain claims.  Dkt. No. 91 at 6.  But that date reflects when Brian W. was forced to resubmit the claims after Premera failed to respond to his initial submission months earlier.  *See* Dkt. No. 82 at 13.  Even then, Premera never responded to the resubmitted claims until Brian W. filed a complaint with Washington's Office of the Insurance Commissioner.  *See id.*  And when it finally did respond, it denied the claims as untimely—meaning Premera believed it had received them over a year after A.W.'s discharge—only to reverse that decision without explanation.  *See* R4177.  The record does not reflect when Premera actually received the claims.[1]  Premera's acknowledgement that it essentially lost Brian W.'s Heritage appeal, despite at some point receiving it (Dkt. No. 45 at 14), further undermines the practicality of setting the accrual date based on when Premera received the claims or when it should have completed an investigation of them.[2]

---

[1] The explanations of benefits Premera cites list the date Brian W. resubmitted the claims (Dkt. No. 91 at 6 (citing R1206–1215)), not when they should have been initially received.

[2] Moreover, to the extent Premera disagreed with the midpoint accrual approach, it had the opportunity to identify the issue when it filed its first supplemental brief in response to the Court's March 13 order.  *See* Dkt. Nos. 82, 85.  Indeed, the Court granted the parties an extension of time to continue discussions on the judgment amount, which should have given Premera the opportunity to identify and air such disagreements.  Instead, at the end of this process, Premera simply "reserve[d] all rights concerning" interest and identified the only "conceptual disagreement" between the parties as "whether the plan terms on reimbursement apply to the judgment."  Dkt. No. 85 at 2.  Had Premera identified the accrual date as disputed, the Court would have invited additional briefing on it, and Brian W. could have weighed in.  But since the reimbursement rate was the only issue identified, the Court directed additional briefing only on that issue.  Dkt. No. 88 at 2.  Brian W. has had no chance to respond to Premera's new position and would require an additional round of briefing to do so.

ORDER ON JUDGMENT AMOUNT, DEFENDANT'S MOTION TO SEAL, AND PLAINTIFF'S MOTION TO STRIKE - 7

Considering both the impracticability of Premera's proposal on this record and the purpose of prejudgment interest in the ERISA context, which is to fully compensate the plaintiff for "losses incurred as a result of [the defendant's] nonpayment of benefits" (*Dishman*, 269 F.3d at 988), the Court adopts the date the parties initially presented, May 1, 2019 (approximately when Brian W. paid for the services at issue), as the accrual date. *See* Dkt. No. 85 at 2.

**E.    Conclusion**

Accordingly, the Court ORDERS that:

(1) The parties shall jointly submit a new proposed judgement by June 5, 2026, reflecting:

    (a)  reimbursement for A.W.'s Heritage treatment at the out-of-network rate,

    (b)  no offset for any partial payments by Premera on Brian W.'s claims, and

    (c)  prejudgment interest at 3.66% accruing from May 1, 2019, and computed according to 28 U.S.C. §1961, including annual compounding.

(2) Premera's motion to seal is DENIED as moot.  Dkt. No. 89.  The Clerk is DIRECTED to strike the sealed document (Dkt. No. 93) from the docket.

(3) Brian W.'s motion to strike (Dkt. No. 94) is DENIED as moot.

Dated this 2nd day of June, 2026.

*Kymberly K Evanson*

Kymberly K. Evanson
United States District Judge

ORDER ON JUDGMENT AMOUNT, DEFENDANT'S MOTION TO SEAL, AND PLAINTIFF'S MOTION TO STRIKE - 8